AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | |
|---|---|
| United States of America<br>v.<br>JAMES QUINDALE PAGE<br><br>*Defendant(s)* | ) ) ) ) ) ) ) Case No. 4-13-70651 MAG |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __May 29, 2013__ in the county of __Contra Costa__ in the __Northern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2113(a) | The defendant did, by force and violence and by intimidation, take from the person and presence of another and obtain by extortion money belonging to, and in the care, custody, control, management, and possession of, a bank.<br><br>The maximum penalties for this offense are: 20 years in prison, $250,000 fine, 3 years of supervised release, and a $100 special assessment. |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT IN SUPPORT OF THIS COMPLAINT

☑ Continued on the attached sheet.

Approved as to form:

_/s/ Brian C. Lewis_
Brian Lewis, AUSA

_____
Complainant's signature

Todd Dorman, FBI Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: 6/11/13

City and state: Oakland, CA

_____
Judge's signature

Donna M. Ryu, U.S. Magistrate Judge
Printed name and title

FILED
JUN 11 2013
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

# AFFIDAVIT OF TODD DORMAN IN SUPPORT OF
# APPLICATION FOR SEARCH WARRANT

I, Todd Dorman, Special Agent, United States Department of Justice, Federal Bureau of Investigation, having been duly sworn, do depose and state that:

## A. INTRODUCTION

1. I am a Special Agent (SA) of the FBI and have been so employed since August of 1989. Currently I am assigned to the Violent Crimes and Major Offender Squad at the Concord Resident Agency, San Francisco Field Office, where my responsibilities include the investigation of bank robberies. In connection with my official duties, I have participated in the investigation of JAMES QUINDALE PAGE for the robbery of Bank of America, 2545 Main Street, Oakley, California, which occurred on May 29, 2013. In connection with my official duties, I have obtained the following information from officers and detectives from the Oakley Police Department (OPD) and from my own investigation. Due to my personal participation in this investigation, I am familiar with the facts and circumstances of this case. My 23 years of experience as an FBI Special Agent, during which I have received training in the investigation of bank robberies and other criminal investigations, and my participation in this investigation as described above, form the basis of the opinions and conclusions set forth below.

2. I make this affidavit in support of a Criminal Complaint and Arrest Warrant charging JAMES QUINDALE PAGE with bank robbery in violation of Title 18 United States Code § 2113(a). Because this affidavit is submitted for the limited purpose of this criminal complaint, I have not included each and every fact known to me about this investigation. Rather,

1

I have set forth those facts that I believe are sufficient to establish probable cause that PAGE committed the aforementioned offense.

### B. APPLICABLE STATUTE

3. 18 U.S.C. § 2113(a) provides in relevant part that: "Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association . . . [s]hall be fined under this title or imprisoned not more than 20 years, or both."

### C. FACTS ESTABLISHING PROBABLE CAUSE

4. On May 29, 2013, at approximately 2:50 p.m., the Bank of America, 2545 Main Street, Oakley, California (the bank), a financial institution with deposits insured by the Federal Deposit Insurance Corporation (FDIC), was robbed. The bank branch is located within a Lucky's grocery store. Bank surveillance video captured the robbery itself, and video from Lucky's captured the robber entering and leaving Lucky's. The robber was a black male wearing a white, gray, and tan patterned long-sleeve dress shirt, dark pants and dark sunglasses. He entered the bank and approached the teller station of teller JV. The robber showed JV a note written on a small white slip of paper which read "This is a Robbery give me all the money now out the drawer $100 $50 $20s" and then said to JV "Don't be stupid and read the note I gave you" as he placed his right hand on his hip as if he had a gun. JV then dropped her drawer keys and before she could retrieve them the robber told her not to pick up the keys because she would

2

just alert the police. JV then showed the demand note to NC, the next teller over.

5.     As the robber moved over to NC's teller station, he said "Give me all the 20s, 100s and 50s." NC pressed her alarm button as she retrieved cash from her teller drawer. The robber took the cash from NC and walked out of the Lucky's store. JV kept the demand note and later provided it to police.

6.     Witnesses described the robber as a black male, 6 feet tall, medium build, in his mid-to-late 20s, and wearing sunglasses and a brown and white flannel shirt. Witnesses also described a tattoo on the front of the robber's neck that was largely obscured by the buttoned collar of the robber's shirt.

7.     From Lucky's surveillance footage of the parking lot, at approximately 2:48 p.m. on the date of the bank robbery, the robber is visible exiting the driver's side of an extended cab white Ford pickup truck parked in the Lucky's parking lot. The robber enters the Lucky's store and at about that time also appears in the bank surveillance footage standing near the in-store bank. Bank surveillance cameras capture the robber as he commits the bank robbery at the teller counter, and the parking lot footage shows the robber leaving the Lucky's store at 2:51 p.m. and returning to the white Ford pickup truck in the parking lot. The robber appears to enter the driver's side of the pickup truck and drive out of the parking lot.

8.     Responding Oakley Police Department (OPD) officers located a long-sleeved gray, brown and white patterned shirt on the ground in the parking lot where the white Ford truck had been parked. I have compared the recovered shirt with surveillance images from the bank robbery and the recovered shirt appears to be the same shirt worn by the robber during the

3

robbery.

9. An audit conducted following the robbery determined the amount taken by the robber to be $1,507. Good quality photographs of the robber were obtained from the bank's digital surveillance cameras. The bank surveillance photographs depict images of the robber which are consistent with witnesses' descriptions.

10. On the same day as the robbery, at approximately 1:00 p.m., the OPD received a call for service from a residence in Oakley. The call was in regard to a domestic dispute between JAMES QUINDALE PAGE (PAGE) and MP. While handling the call officers observed PAGE taking some personal belongings from the residence and placing the items into an extended cab white Ford F150 pickup truck. OPD officers queried PAGE's criminal history and were informed he was on federal supervised release for bank robbery. PAGE left the residence in the pickup truck and at approximately 1:30 p.m. the OPD officers left the residence.

11. After the bank robbery, one of the OPD officers who had handled the domestic dispute between PAGE and MP viewed the bank surveillance photographs from the robbery. The officer immediately identified the robber as PAGE.

12. Records of the California Department of Motor Vehicles (DMV) were queried regarding vehicles registered to PAGE. The DMV records indicate PAGE owns a 2009 Ford F150 pickup truck with an extended cab. The vehicle is registered to PAGE at the same address as the address listed on PAGE's California Driver's License, on School Street in Pittsburg, California. The California Driver's License lists PAGE at 5'10" tall and 170 pounds, which is consistent with witness descriptions of the Robber. I have reviewed PAGE's California Driver's

License photograph and that photograph appears very similar to the face of the Robber in the bank surveillance photographs.

13. On May 30, 2013, I contacted United States Probation Officer Jenna Russo. Russo told me she is PAGE's probation officer. Russo said PAGE's residence of record the same address on School Street in Pittsburg as is listed on PAGE's California Driver's License and vehicle registration. Russo said she last saw PAGE at approximately 11:00 a.m. on May 29, 2013, in her Oakland, California office. Russo said PAGE has a tattoo on the front side of his neck, but she could not describe the tattoo in detail. Russo reviewed three surveillance images depicting the bank robbery which occurred on May 29, 2013, at the Bank of America in Oakley. Russo told me the individual depicted in the surveillance photographs looked like PAGE, but she could not positively identify PAGE as the Robber.

14. On June 10, 2013 PAGE was arrested on an arrest warrant issued by the Superior Court for Contra Costa County. At the time of his arrest he was standing at the open door of the white Ford F150 registered to him. Following his arrest, I interviewed PAGE and he admitted to me that he robbed the Bank of America in Oakley on May 29, 2013. During this interview, I noticed PAGE has a large tattoo on the front of his neck.

15. I have met PAGE in person and have reviewed bank surveillance images from the robbery. I believe PAGE is the Robber depicted in the bank surveillance images.

**D. CONCLUSION**

16. Based on the above information, I believe that JAMES QUINDALE PAGE committed the robbery of the Bank of America, 2545 Main Street, Oakley, California, which

5

occurred on May 29, 2013 in violation of Title 18 United States Code § 2113(a).

WHEREFORE, I request that no bail arrest warrants be issued for JAMES QUINDALE PAGE.

I declare under penalty of perjury that the statement above are true and correct to the best of my knowledge and belief.

_____
Todd A. Dorman, Special Agent
Federal Bureau of Investigation


SWORN AND SUBSCRIBED TO BEFORE ME
THIS ___11th___ DAY OF JUNE, 2013.

_____
DONNA M. RYU
United States Magistrate Judge

6